1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DANYLLE SIMMONS,                                    )          NO. EDCV 13-1346 AGR
                                                   )
                 Plaintiff,                        )
                                                   )
          v.                                       )
                                                   )          MEMORANDUM OPINION AND
CAROLYN W. COLVIN,                                 )          ORDER
Commissioner of Social Security,                   )
                                                   )
                 Defendant.                        )
_____)

          Plaintiff Danylle Simmons filed this action on August 14, 2013.  Pursuant to

28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge

on September 18 and 27, 2013.  (Dkt. Nos. 12, 13.)  On February 19, 2014, the

parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The

court has taken the matter under submission without oral argument.

          Having reviewed the entire file, the court affirms the decision of the

Commissioner.

1

2

**I.**

**PROCEDURAL BACKGROUND**

3        On May 8, 2008, an application for supplemental security income was filed

4    on behalf of Simmons, who was then a child under the age of 18.[1]  AR 25, 228-

5    30.  On September 8, 2008, an application for child's benefits under Title II of the

6    Social Security Act was filed on behalf of Simmons.  AR 25.  In both applications,

7    Simmons alleged a disability onset date of November 23, 1990, her date of birth.

8    AR 25.  The applications were denied initially and on reconsideration.  AR 25, 93-

9    95.  Simmons requested a hearing before an Administrative Law Judge ("ALJ").

10   AR 131.  On February 22, 2010, the ALJ conducted a hearing at which Simmons

11   and a vocational expert ("VE") testified.  AR 45-67.  On April 9, 2010, the ALJ

12   issued a decision denying benefits.  AR 99-105.  Simmons requested review by

13   the Appeals Council.  AR 110.

14       On May 18, 2011, the Appeals Council vacated the decision and remanded

15   the case to the ALJ to obtain additional evidence concerning Simmons'

16   musculoskeletal condition; further evaluate Simmons' subjective complaints;

17   obtain evidence from a medical expert, if necessary; give further consideration to

18   Simmons' residual functional capacity ("RFC") during the entire period at issue;

19   and obtain supplemental evidence from a VE, if warranted.  AR 110-12.  On

20   November 22, 2011, the ALJ conducted a hearing at which Simmons, a medical

21   expert, and a VE testified.  AR 68-92.  On January 10, 2012, the ALJ issued a

22   decision finding Simmons disabled until the age of 18 and not disabled as an

23   adult.  AR 22-40.  On May 31, 2013, the Appeals Council denied the request for

24   review.  AR 1-5.  This action followed.

25

26        [1]  Simmons filed a prior application for supplemental security income
     benefits on May 1, 2006, which was denied initially on December 12, 2006.
27   Administrative Record ("AR") 25.  Simmons filed her May 8, 2008 application less
     than 24 months following the December 12, 2006 determination.  *Id.*  The ALJ
28   determined there was "good cause" to reopen the 2006 application.  *Id.*

1

2

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

**A.    Disability**

"An individual under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).[2]  An impairment is "marked and severe" if it meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix I.  20 C.F.R. § 416.924(d)(1).  A claimant's condition "meets" a listed impairment if the

---

[2]  "[N]o individual under the age of 18 who engages in substantial gainful activity . . . may be considered to be disabled."  42 U.S.C. § 1382c(a)(3)(C)(ii).

claimant's impairment matches the listed impairment.  *Id.*  A claimant's condition "medically equals" the listed impairment by demonstrating medical findings that are of equal medical significance to the listed impairment.  20 C.F.R. § 416.926(b)(1)(ii).  A claimant's condition "functionally equals" a listed impairment by showing either a marked limitation in two functional domains (out of six) or an extreme limitation in one domain.  20 C.F.R. § 416.926a(a).  The six domains are acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for yourself, and health and physical well-being.  20 C.F.R. § 416.926a(b)(1)(i-vi).

The standard for determining disability in individuals who have attained the age of 18 is different from the childhood standard.  At age 18 and older, a person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

**B.    The ALJ's Findings**

The ALJ found that Simmons had not engaged in substantial gainful activity since November 23, 1990, the alleged onset date.  AR 30.  Before attaining age 18, Simmons had the severe impairments of neonatal right brachial plexus injury with right arm paralysis and obesity.  AR 31.  Before attaining age 18, Simmons had an impairment or combination of impairments that functionally equaled a listing.  *Id.*  The ALJ found Simmons disabled prior to attaining age 18.  AR 32.

Since attaining age 18, Simmons has not developed any new impairments and did not meet or medically equal a listed impairment.  *Id.*  She had the RFC to perform light work, except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently with the left upper extremity; stand, walk or sit for six hours out

1    of an eight-hour workday with regular breaks; and climb stairs.  She cannot climb

2    ladders, work at heights or balance.  She cannot use her right upper extremity

3    except as a helper.  AR 33.  She has no past relevant work.  AR 38.  There are

4    jobs that exist in significant numbers in the national economy that she can

5    perform such as ticket taker, information clerk and charge account clerk.  AR 39.

6    She has not been under a disability from the day she attained age 18 on

7    November 22, 2008 through the date of the ALJ's decision.  AR 40.

8        **C.    Treating Physician**

9        Simmons contends the ALJ erred in rejecting the opinion of treating

10   physician, Dr. Fang.

11       An opinion of a treating physician is given more weight than the opinion of

12   non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To

13   reject an uncontradicted opinion of a medically acceptable treating source, an

14   ALJ must state clear and convincing reasons that are supported by substantial

15   evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When a

16   treating physician's opinion is contradicted by another doctor, "the ALJ may not

17   reject this opinion without providing specific and legitimate reasons supported by

18   substantial evidence in the record.  This can be done by setting out a detailed

19   and thorough summary of the facts and conflicting clinical evidence, stating his

20   interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and

21   quotation marks omitted).  "When there is conflicting medical evidence, the

22   Secretary must determine credibility and resolve the conflict."  *Thomas v.*

23   *Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002).

24       The record contains a Residual Functional Capacity Questionnaire ("RFC

25   Questionnaire"), dated February 26, 2009, from Dr. Fang.[3]  AR 38, 338-39.  Dr.

26   _____

27       [3]  The record also contains Dr. Fang's treatment records (nine pages) from
28   1990-2010 that appear to be notes recording height, weight and general
     information.  AR 35, 527-35.  Simmons does not contend the ALJ failed to

Fang indicated Simmons was paralyzed in her right arm and could not use it.  AR 338-39.  He indicated that Simmons would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical breaks.  AR 338.  However, the form contains a direct question as to whether the claimant will need to take unscheduled breaks during an 8-hour workday.  Dr. Fang did not answer yes or no, and instead wrote a question mark.  He indicated that Simmons did not have any other limitations that would affect her ability to work at a regular job on a sustained basis.  AR 339.

The ALJ gave "some weight" to Dr. Fang's opinion.  AR 38.  He noted that Dr. Fang indicated that Simmons was paralyzed in her right arm and could not use it.  AR 38.  He noted that "Dr. Fang did not opine as to any additional limitations for [Simmons]."  AR 38 (citing AR 339).  He noted that Dr. Fang's opinion was "without substantial support" from the evidence in the record and lacked findings or an assessment of capacity.  AR 38.

Simmons argues that the ALJ failed to consider and evaluate Dr. Fang's opinion that she would need to recline or lie down during a hypothetical 8-hour workday in excess of the typical breaks.  However, Dr. Fang did not appear to know whether Simmons would require unscheduled breaks.[4]  Dr. Fang's treatment notes do not mention fatigue.[5]  It is the ALJ's province to resolve conflicts in the medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

---

properly consider these treatment records.

[4]  If a physician expects that a claimant will need unscheduled breaks, the form asks how often and how long each break would last before the claimant could return to work.  Dr. Fang did not answer these questions.  AR 338.

[5]  When asked at the hearing why she cannot work, Simmons did not say she would need to lie down in excess of scheduled breaks.  AR 81.

1

### D.   RFC Determination

2       Simmons contends the ALJ's RFC assessment is not supported by

3   substantial evidence.

4       The RFC determination measures the claimant's capacity to engage in

5   basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022,

6   90 L. Ed. 2d 462 (1986).  The RFC is a determination of "the most [an individual]

7   can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  It is an

8   administrative finding, not a medical opinion.  20 C.F.R. § 404.1527(e)(2).  The

9   RFC takes into account both exertional limitations and non-exertional limitations.

10  The RFC must contain "a narrative discussion describing how the evidence

11  supports each conclusion, citing specific medical facts (e.g., laboratory findings)

12  and nonmedical evidence (e.g., daily activities, observations)."  Social Security

13  Ruling ("SSR") 96-8p.[6]  The ALJ must also explain how he or she resolved

14  material inconsistencies or ambiguities in the record.  *Id.*  "When there is

15  conflicting medical evidence, the Secretary must determine credibility and resolve

16  the conflict."  *Thomas*, 278 F.3d at 956-57 (citation omitted).

17      The ALJ's RFC determination was that since attaining age 18, Simmons

18  can perform light work, except she can lift and/or carry 20 pounds occasionally

19  and 10 pounds frequently with her left upper extremity; stand, sit, and/or walk for

20  six hours out of an eight-hour workday with regular breaks; and climb stairs.  She

21  cannot climb ladders, work at heights or balance.  AR 33.  She is unable to use

22  her right upper extremity except as a helper.  *Id.*

23      Simmons argues that the ALJ made three errors in determining her RFC:

24  (1) he failed to include functional limitations based on his findings that she

25  _____

26      [6]  Social Security rulings do not have the force of law.  Nevertheless, they
   "constitute Social Security Administration interpretations of the statute it
27  administers and of its own regulations," and are given deference "unless they are
   plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
28  F.2d 1453, 1457 (9th Cir. 1989).

1  suffered from marked limitations in attending and completing tasks; (2) he failed

2  to account for the pain she experiences; and (3) he found that she could use her

3  right hand as a "helper" even though substantial evidence in the record

4  demonstrates she is completely unable to use her right hand.

5       The Commissioner correctly argues that the ALJ's finding of marked

6  limitations in attending and completing tasks was part of the childhood disability

7  analysis, which differs from the adult disability analysis.  The ALJ found marked

8  limitations when he was determining, under the childhood standards of disability,

9  whether an impairment or combination of impairments functionally equaled a

10  listing.  AR 31; 20 C.F.R. § 416.926a(b)-(e).

11       With respect to Simmons' argument about pain, the ALJ properly

12  discounted her credibility for the reasons discussed below.

13       To the extent the ALJ erred in finding Simmons could not use her right arm

14  except as a helper, any error was harmless.  The ALJ's hypothetical to the VE

15  included a limitation of "no use of the right upper extremity except as a helper,

16  minimally as a helper."  AR 87.  The VE testified that there would be work in the

17  national economy that a claimant could perform such as ticket taker, information

18  clerk and charge account clerk.  AR 88.  The ALJ asked whether these jobs

19  required bilateral dexterity.  The VE answered no.  The ALJ asked whether these

20  jobs could be performed with one arm.  The VE responded:  "These positions

21  would allow for unilateral or just one, one arm use."  AR 88.  The claimant's

22  attorney cross examined the VE on that testimony.  AR 89-90.  The record is

23  clear that the VE identified jobs that could be done with only one arm.  *See*

24  *McLeod v. Astrue*, 640 F.3d 881, 887-88 (9th Cir. 2011) (harmless error rule).

25       **E.    Credibility**

26       Simmons contends the ALJ improperly rejected her testimony regarding

27  her pain and functional limitations.

28       "To determine whether a claimant's testimony regarding subjective pain or

8

1   symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*
2   *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must
3   determine whether the claimant has presented objective medical evidence of an
4   underlying impairment 'which could reasonably be expected to produce the pain
5   or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344
6   (9th Cir.1991) (en banc)).  The ALJ found that since attaining age 18, Simmons'
7   medically determinable impairments could reasonably be expected to produce
8   the alleged symptoms.  AR 35.

9       "Second, if the claimant meets this first test, and there is no evidence of
10  malingering, the ALJ can reject the claimant's testimony about the severity of her
11  symptoms only by offering specific, clear and convincing reasons for doing so."
12  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making
13  a credibility determination, the ALJ 'must specifically identify what testimony is
14  credible and what testimony undermines the claimant's complaints[.]'" *Greger v.*
15  *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

16      In weighing credibility, the ALJ may consider factors including:  the nature,
17  location, onset, duration, frequency, radiation, and intensity of any pain;
18  precipitating and aggravating factors (e.g., movement, activity, environmental
19  conditions); type, dosage, effectiveness, and adverse side effects of any pain
20  medication; treatment, other than medication, for relief of pain; functional
21  restrictions; the claimant's daily activities; and "ordinary techniques of credibility
22  evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks
23  omitted).  The ALJ may consider:  (a) inconsistencies or discrepancies in a
24  claimant's statements; (b) inconsistencies between a claimant's statements and
25  activities; (c) exaggerated complaints; and (d) an unexplained failure to seek
26  treatment.  *Thomas*, 278 F.3d at 958-59.

27      The ALJ found that since attaining age 18, Simmons' statements
28  concerning the intensity, persistence and limiting effects of her symptoms were

9

1    not credible to the extent they were inconsistent with the RFC.  AR 35.  The ALJ

2    relied on four reasons:  (1) conservative treatment; (2) inconsistent and

3    contradictory statements; (3) inconsistency between Simmons' statements and

4    daily activities; and (4) the objective evidence did not support the severity of the

5    alleged symptoms.  AR 34-35.

6         "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's

7    testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742,

8    751 (9th Cir. 2007) (citation omitted).  The ALJ noted that the treatment records

9    reveal that Simmons received routine and conservative treatment.  AR 35.  In

10   October 2008, Simmons reported she was taking Tylenol Extra Strength.  AR

11   324.  She testified in February 2010 that she took prescription-strength Tylenol

12   and used Icy-Hot for her pain.  AR 59.  When the ALJ asked why she did not

13   request stronger medication for pain that is allegedly at level 10, she testified that

14   she had "never thought of it like that."  AR 60.  In August 2011, Simmons reported

15   she was taking no medications.  AR 536.  In November 2011, Simmons testified

16   she was taking Ibuprofen 800 mg and Gabapentin 300 mg, which took away

17   some of the pain.  AR 81-82.  Impairments that can be controlled effectively with

18   medication are not considered disabling.  *Warre v. Comm'r of Soc. Sec. Admin.*,

19   439 F.3d 1001, 1006 (9th Cir. 2006).

20        An ALJ may consider inconsistencies in a claimant's statements when

21   weighing a claimant's credibility.  *Thomas*, 278 F.3d at 958-59.  The ALJ noted

22   that Simmons denied smoking or drinking alcohol even though the medical record

23   that she had once been transported to the hospital in an unresponsive condition

24   and was diagnosed with substance abuse, alcohol intoxication and hypokalimia.

25   AR 34-35.  Simmons tested positive for amphetamines and cannabinoids.  AR

26   35-36, 52-53, 387, 391, 400.

27        The ALJ cited inconsistencies between Simmons' statements and daily

28   activities.  AR 34.  The ALJ noted that while Simmons alleged she was unable to

1    do household chores, care for her young children without assistance, or dress

2    herself, the record indicated that she could ambulate independently and could

3    perform all activities of daily living without assistance.  AR 34, 79-80, 252-53,

4    392, 503, 546.  An ALJ may consider a claimant's daily activities when weighing

5    credibility.  *Bunnell*, 947 F.2d at 346.

6    Although lack of objective medical evidence supporting the degree of

7    limitation "cannot form the sole basis for discounting pain testimony," it is a factor

8    that an ALJ may consider in assessing credibility.  *Burch*, 400 F.3d at 681.

9    Simmons argues that the medical records support her contention that she suffers

10   from pain in her right arm.  AR 327, 339, 590-91.[7]  However, the medical records

11   are consistent with conservative treatment.  *Tommasetti v. Astrue*, 533 F.3d

12   1035, 1040 (9th Cir. 2008) (describing anti-inflammatory medication as

13   conservative treatment).

14   The ALJ's credibility finding is supported by substantial evidence, and this

15   court "may not engage in second-guessing."  *Thomas*, 278 F.3d at 959 (citing

16   *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

---

24       [7]  Included in Simmons' citations is a report from Dr. Karnani, dated August
25   15, 2012, that Simmons submitted to the Appeals Council.  AR 5, 590-91.  Given
     that the Appeals Council considered the new evidence, this court also considers
     Dr. Karnani's report.  *See Lingenfelter*, 504 F.3d at 1030 n.2; *Harman v. Apfel*,
26   211 F.3d 1172, 1179-80 (9th Cir. 2000).  Dr. Karnani concluded that an abnormal
     NCS of the right upper extremity revealed evidence of motor deficit involving the
27   median motor nerve, and suggestive of brachial plexopathy.  AR 591.  He stated
     that Simmons was "totally devoid of use of her right upper extremity and needs to
28   take pain medications for pain relief."  *Id.*

1

**IV.**

2

**ORDER**

3          IT IS HEREBY ORDERED that the decision of the Commissioner is

4    affirmed.

5          IT IS FURTHER ORDERED that the Clerk serve copies of this Order and

6    the Judgment herein on all parties or their counsel.

7

8

9    DATED:  May 29, 2014

ALICIA G. ROSENBERG
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12